UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GUSTAVO AMEZCUA GONZALEZ,

Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

Respondent.

CASE NO. C19-442-MJP-BAT

**REPORT AND RECOMMENDATION**

## INTRODUCTION

Gustavo Amezcua Gonzalez ("Mr. Amezcua"), a native and citizen of Mexico, brings this 28 U.S.C. § 2241 habeas action to challenge his continued detention by U.S. Immigration and Customs Enforcement ("ICE").  Mr. Amezcua filed his habeas petition *pro se* but is now represented by counsel.  The Government has moved to dismiss, asserting that Mr. Amezcua is lawfully detained and that his detention comports with due process.  Mr. Amezcua opposes dismissal.  As discussed below, the Court recommends that the Government's motion to dismiss be **GRANTED**, Mr. Amezcua's habeas petition be **DENIED**, and this action be **DISMISSED** with prejudice.

## BACKGROUND

Mr. Amezcua first entered the United States in 1996 at the age of six.  Dkt. 20-1 at 3.  In

REPORT AND RECOMMENDATION - 1

1   August 2009, an immigration judge ("IJ") ordered Mr. Amezcua removed, and his appeal to the

2   Board of Immigration Appeals ("BIA") was unavailing.  Dkts. 20-2, 20-3.  ICE eventually

3   removed Mr. Amezcua to Mexico in March 2015.  Dkts. 20-4, 20-5, 20-6.  Mr. Amezcua

4   returned to the United States shortly thereafter.  Dkt. 20-7 at 4.

5           In June 2016, ICE arrested Mr. Amezcua and served him with a Notice of Intent/Decision

6   to Reinstate Prior Order.  Dkts. 20-8, 20-9, 20-10; *see also* 8 C.F.R. § 241.8(a) ("[A noncitizen]

7   who illegally reenters the United States after having been removed . . . while under an order of . .

8   . removal shall be removed from the United States by reinstating the prior order.").  Mr.

9   Amezcua claimed a fear of returning to Mexico.  Dkt. 19 ("Castro Decl.") ¶ 4.  An asylum

10  officer found that Mr. Amezcua had a reasonable fear of return, and Mr. Amezcua was placed in

11  withholding only proceedings.  *Id.*; *see also* 8 C.F.R. § 1208.31.  Mr. Amezcua's individual

12  hearing on his withholding application was rescheduled twice and eventually occurred on April

13  24, 2017.  Castro Decl. ¶¶ 5-6.  On June 19, 2017, the IJ denied Mr. Amezcua's applications for

14  relief.  *Id.* at ¶ 6.  The BIA dismissed Mr. Amezcua's appeal on November 20, 2017, Dkt. 20-11,

15  and he filed a petition for review with the Ninth Circuit, *Gonzalez v. Barr*, No. 17-73229, Dkt. 1

16  (9th Cir. Dec. 4, 2017).  On May 2, 2019, the Ninth Circuit granted his petition in part and

17  remanded to the BIA for further proceedings.  *Id.* at Dkt. 40.  His case remains pending before

18  the BIA.

19          Since his arrest in June 2016, Mr. Amezcua has remained in immigration detention.

20  During this time, he has had four bond hearings.[1]  Castro Decl. ¶¶ 7, 9, 10, 13.  On August 10,

21  2017, the IJ held a bond hearing and denied bond based on lack of jurisdiction, or alternatively,

22

23
_____
[1] Mr. Amezcua's counsel appeared at the first three hearings but did not receive notice of the fourth.  *See* Dkt. 24 at
1.

REPORT AND RECOMMENDATION - 2

1   because the government presented clear and convincing evidence that Mr. Amezcua poses a

2   flight risk based on his limited forms of relief, immigration history, and criminal history, which

3   included traffic offenses in 2010 and 2011, drug-related convictions in 2008 and 2009, and a

4   disorderly conduct conviction from 2007.  Dkt. 20-14 at 3-4; *see also* Dkt. 20-13.  The BIA

5   dismissed Mr. Amezcua's appeal, agreeing with the IJ that the government met its burden under

6   the clear and convincing evidence standard.  Dkt. 20-16.

7        On May 8, 2018, Mr. Amezcua received a bond hearing pursuant to *Martinez-Baños v.*

8   *Asher*, No. 16-1454, 2018 WL 1617706, at *1 - *2 (W.D. Wash. Apr. 4, 2018), *adopting R & R*,

9   2018 WL 3244988 (Jan. 23, 2018) (holding that detained noncitizens who are subject to

10  reinstated removal orders and are in withholding only proceedings are entitled to bond hearings

11  every 180 days).  Dkt. 20-18.  The IJ denied bond, citing the same evidence as above and

12  concluding that the government sustained its burden of demonstrating Mr. Amezcua presents a

13  flight risk.  Dkt. 20-19 at 4-5.  The BIA dismissed Mr. Amezcua's appeal, finding that "even

14  with the applicant's positive equities, [the government] has met its burden to establish that the

15  applicant's prior removal and subsequent illegal reentry, as well as his criminal history, supports

16  the conclusion that the applicant is a flight risk."  Dkt. 20-20 at 4.

17       On November 7, 2018, Mr. Amezcua received a second *Martinez-Baños* bond hearing.

18  Dkts. 21, 22 (Audio Recording, Tracks 1-2).  Counsel for Mr. Amezcua argued, as he had during

19  past hearings, that Mr. Amezcua's criminal history was minor, he had lived in Wenatchee since

20  coming to the United States, he had steady employment as a landscaper with his father, he has a

21  U.S. citizen child, is married, and kept in contact with ICE during his initial immigration

22  proceedings.  Audio Recording, Track 1.  The IJ again found that the government met its burden

23  of establishing that Mr. Amezcua presents a flight risk based on his significant immigration

REPORT AND RECOMMENDATION - 3

1    history and his limited avenues of relief for removal.  Audio Recording, Track 2.  Mr. Amezcua

2    did not appeal.

3        On May 6, 2019, Mr. Amezcua received a third *Martinez-Baños* bond hearing.  Dkt. 20-

4    23; Audio Recording, Tracks 3-4.  The IJ again denied bond, finding that the government met its

5    burden of establishing flight risk.  *Id.*  Mr. Amezcua did not appeal.  *Id.*

6        Mr. Amezcua initiated this action *pro se* on March 25, 2019, seeking release on bond.

7    Dkt. 1.  The Government's motion to dismiss has been fully briefed and is ripe for review.  *See*

8    Dkts. 18, 24, 25.

9                                          **DISCUSSION**

10        Mr. Amezcua is subject to a reinstated removal order and is in withholding only

11   proceedings.[2]  Thus, his detention is governed by 8 U.S.C. § 1231(a).  *See Padilla-Ramirez v.*

12   *Bible*, 882 F.3d 826, 832 (9th Cir. 2017) (holding that § 1231(a) authorizes detention of

13   noncitizens who are subject to reinstated removal orders and have applied for withholding of

14   removal).  "Section 1231(a) provides for mandatory detention during a ninety-day 'removal

15   period,' *id.* § 1231(a)(2), and discretionary detention 'beyond the removal period' in certain

16   circumstances, *id.* § 1231(a)(6)."  *Padilla-Ramirez*, 882 F.3d at 829.  Because Mr. Amezcua's

17   removal period has expired, he is detained under § 1231(a)(6).

18        In *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit held

19

20   [2] If a noncitizen who is removed pursuant to a removal order subsequently reenters the United States illegally, DHS
     may reinstate the original removal order.  *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en

21   banc); 8 C.F.R. § 241.8.  A reinstated removal order is not subject to being reopened or reviewed and in most cases
     results in the noncitizen being removed without delay.  *See* 8 U.S.C. § 1231(a)(5).  There is one exception.  When a
     noncitizen expresses a fear of return to his or her home country and an asylum officer finds this fear to be

22   reasonable, the noncitizen is permitted to apply for withholding of removal.  *Ortiz-Alfaro v. Holder*, 694 F.3d 955,
     956 (9th Cir. 2012); 8 C.F.R. §§ 241.8(e), 208.31(e).  The IJ's decision to grant or deny withholding of removal may

23   be appealed to the BIA.  8 C.F.R. § 208.31(g)(2)(ii).  Judicial review of the BIA's determination is available in the
     Court of Appeals.  *See Ortiz-Alfaro*, 694 F.3d at 958-60.  While withholding only proceedings are pending before
     the IJ or the BIA, DHS cannot execute a reinstated removal order.  *See id.* at 957; 8 U.S.C. § 1231(b)(3).

1    that "an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is

2    entitled to release on bond unless the government establishes that he is a flight risk or a danger to

3    the community."  *Id.* at 1082.  Specifically, the court held that the government must provide a

4    custody hearing before an IJ to noncitizens who are denied release in their six-month DHS

5    custody reviews and whose release or removal is not imminent.  *Id.* at 1091-92 ("When detention

6    crosses the six-month threshold and release or removal is not imminent, the private interests at

7    stake are profound.  Furthermore, the risk of an erroneous deprivation of liberty in the absence of

8    a hearing before a neutral decisionmaker is substantial."); *see also id.* at 1092 n.13 ("As a

9    general matter, detention is prolonged when it has lasted six months and is expected to continue

10   more than minimally beyond six months.").

11         In *Martinez- Baños*, the Honorable James L. Robart relied on *Diouf II* to hold that

12   noncitizens subject to reinstated removal orders who have applied for withholding of removal are

13   entitled to automatic custody hearings every six months.  2018 WL 1617706, at *1 - *2.  Such

14   hearings must comply with the procedural safeguards established in *Singh v. Holder*, 638 F.3d

15   1196 (9th Cir. 2011), including that the government must justify continued detention by clear

16   and convincing evidence.  *Martinez- Baños*, 2018 WL 3244988, at *5 (R & R).  To make this

17   determination, the IJ may consider any number of discretionary factors, including:  (1) whether

18   the detainee has a fixed address in the United States; (2) the detainee's length of residence in the

19   United States; (3) the detainee's family ties in the United States, and whether they may entitle

20   the detainee to reside permanently in the United States in the future; (4) the detainee's

21   employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal

22   record, including the extensiveness of criminal activity, the recency of such activity, and the

23   seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts

REPORT AND RECOMMENDATION - 5

1    by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner

2    of entry to the United States.  *In re Guerra*, 20 I. & N. Dec. at 40; *see also Singh*, 638 F.3d at

3    1206.

4         As noted above, DHS provided Mr. Amezcua with *Martinez-Baños* bond hearings on

5    May 8, 2018, November 7, 2018, and May 6, 2019.  Mr. Amezcua alleges several deficiencies

6    with the bond hearings.  (*See* Dkt. 24.)  First, he argues that he is entitled to more procedural

7    protections than those provided for in *Martinez-Baños* because he is a member of the class

8    certified in *Padilla v. U.S. Immigration & Customs Enforcement*, No. 18-928, 2019 WL 1056466

9    (W.D. Wash. Mar. 6, 2019).  The court in *Padilla* certified two classes:

10           (1) Credible Fear Interview Class: All detained asylum seekers in the United
             States *subject to expedited removal proceedings under 8 U.S.C. § 1225(b)* who
11           are not provided a credible fear determination within ten days of the later of (1)
             requesting asylum or expressing a fear of persecution to a DHS official or (2) the
12           conclusion of any criminal proceeding related to the circumstances of their entry,
             absent a request by the asylum seeker for a delayed credible fear interview.

13
             (2) Bond Hearing Class: All detained asylum seekers who entered the United
14           States without inspection, were *initially subject to expedited removal proceedings
             under 8 U.S.C. § 1225(b)*, were determined to have a credible fear of persecution,
15           but are not provided a bond hearing with a verbatim transcript or recording of the
             hearing within seven days of requesting a bond hearing.

16
     *Id.* at *1 (emphases added).  Because Mr. Amezcua is not and has never been subject to

17
     expedited removal proceedings, he is not a *Padilla* class member.  Accordingly, this argument

18
     fails.[3]  Second, Mr. Amezcua argues that the IJ placed the burden on him to prove that he is not a

19
     flight risk or danger to the community.  (Dkt. 24 at 3.)  As discussed above, however, the IJ and

20
     BIA both placed the burden on the government.  Third, Mr. Amezcua argues that the lack of a

21
     verbatim transcript of proceedings or a contemporaneous set of written findings compromised his

22

23
     _____

     [3] Mr. Amezcua also asks the Court to retain jurisdiction over this matter pending resolution of the Ninth Circuit
     appeal in *Padilla*.  As *Padilla* does not apply, this request should be denied.

     REPORT AND RECOMMENDATION - 6

1    ability to appeal the denial of bond.  (*Id.*)  But Mr. Amezcua was able to file two appeals and he

2    fails to explain what he would have done differently if he had access to a transcript or

3    contemporaneous written findings, particularly when there is an audio recording of the hearings.

4    Finally, Mr. Amezcua argues that the IJ must now take into consideration that the Ninth Circuit

5    remanded his case to the BIA.  While he may present such evidence at his next bond hearing, this

6    new development does not establish that his previous bond hearings failed to comport with due

7    process.  Because Mr. Amezcua fails to establish that his bond hearings did not comply with the

8    applicable due process requirements, his habeas petition should be denied.

9                              **CONCLUSION AND RIGHT TO OBJECT**

10          The Court recommends that the Government's motion to dismiss, Dkt. 18, be

11   GRANTED, Mr. Amezcua's habeas petition be DENIED, and this action be DISMISSED with

12   prejudice.  A proposed order accompanies this Report and Recommendation.

13          This Report and Recommendation is not an appealable order.  Therefore a notice of

14   appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

15   assigned District Judge enters a judgment in the case.  Objections, however, may be filed and

16   served upon all parties no later than **December 5, 2019.**  The Clerk should note the matter for

17   **December 6, 2019**, as ready for the District Judge's consideration if no objection is filed.  If

18   objections are filed, any response is due within 14 days after being served with the objections.  A

19   party filing an objection must note the matter for the Court's consideration 14 days from the date

20   the objection is filed and served.  The matter will then be ready for the Court's consideration on

21   \\

22   \\

23

REPORT AND RECOMMENDATION - 7

1   the date the response is due.  Objections and responses shall not exceed ten pages.  The failure to

2   timely object may affect the right to appeal.

3          DATED this 20th day of November, 2019.

4

5   _____

    BRIAN A. TSUCHIDA
6   Chief United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 8